IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DEBORAH E. COLJOHN,<br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social<br>Security Administration,<br>    Defendant. | §<br>§<br>§<br>§<br>§    Civil Action No. 3:16-CV-1208-K-BK<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to *Special Order 3*, this case has been referred to the magistrate judge for pretrial management. Now before the Court are the parties' cross-motions for summary judgment. Doc. 16; Doc. 17. For the reasons that follow, the Court recommends that Plaintiff's *Motion for Summary Judgment* be **GRANTED**, Defendant's *Motion for Summary Judgment* be **DENIED**, the Commissioner's decision be **REVERSED**, and the case be **REMANDED** for further administrative proceedings.

**I. BACKGROUND**

**A.** <u>**Procedural History**</u>

Plaintiff Deborah E. Coljohn seeks judicial review of a final decision by the Commissioner denying her claim for Social Security Disability Insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423. Plaintiff filed her application in February 2013, alleging disability beginning August 24, 2012, due to arthritis, spinal stenosis, fibromyalgia, "bulging spine," and "fusion." Doc. 12-4 at 2 & Doc. 12-5 at 5. Her application was denied at all administrative levels, and she now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. section 405(g). Doc. 10-3 at 2 & Doc. 12-1 at 68-77, 85.

B.      **Factual History**

*Age, Education, and Work Experience*

Plaintiff was 57 years old on her alleged disability onset date. *See* Doc. 12-5 at 2. She has three years of college education and past relevant work as an account manager, an office supervisor, and a driver for a transportation company and school district. Doc. 12-5 at 29.

*Medical Evidence*

After a CT scan performed in August 2012 showed that Plaintiff had degenerative disk disease in her cervical spine, Doc. 13 at 15, she began making regular visits to her health care providers for neck pain treatment. Doc. 13-2 at 14. This included monthly visits to pain management physicians, Dr. Robert J. Balch III, D.O.,[1] and Dr. Seval Gunes, M.D.,[2] starting in September 2012.

In November 2012, at Dr. Balch's urging, *see* Doc. 12-6 at 6, an MRI of Plaintiff's cervical spine was taken that revealed mild facet arthropathy leftward at C2-C3; mild to moderate facet arthropathy, and mild spondylosis and uncovertebral joint hypertrophy with borderline bilateral foraminal narrowing at C3-C4; moderate facet arthropathy and mild spondylosis at C4-C5; spondylosis with posterior degenerative ridging, mild to moderate central stenosis, severe left foraminal stenosis, and moderate facet arthropathy at C5-C6; moderate facet arthropathy, mild spondylosis with mild right foraminal narrowing at C6-C7; mild to moderate facet arthropathy at C7-T1; and mild facet arthropathy at T1-T2. Doc. 12-6 at 58-59. On the

---

[1] *See* Doc. 12-6 at 3 (Sept. 2012), 5 (Oct. 2012), 7 (Nov. 2012), 9 (Dec. 2012), 11 (Dec. 2012), 14 (Jan. 2013), 16 (Feb. 2013), 18 (Mar. 2013), 76 (Apr. 2013), 78 (May 2013), 89 (May 2013), 91 (June 2013), 96 (July 2013); Doc. 12-9 at 14 (Aug. 2013).
[2] *See* Doc. 13-1 at 44 (Aug. 2013); Doc. 13 at 58 (Sept. 2013), 62 (Sept. 2013), 69 (Oct. 2013), 71 (Nov. 2013), 76 (Nov. 2013), 78 (Nov. 2013); Doc. 13-1 at 24 (Dec. 2013), 20 (Jan. 2014); Doc. 13-2 at 46 (Jan. 2014), 43 (Feb. 2014), 40 (Mar. 2014), 37 (May 2014), 34 (May 2014), 30 (June 2014).

2

basis of these results, Plaintiff was referred to Dr. Jason Tinley, M.D., who found her to have cervical spondylosis without myelopathy, spinal stenosis in cervical region, cervicalgia, displacement of cervical intervertebral disc without myelopathy, degeneration of cervical intervertebral disc, and neck sprain and strain. Doc. 12-6 at 102. Because Plaintiff "failed all reasonable conservative management and continue[d] to be progressively debilitated," Dr. Tinley performed a C5-C6 anterior cervical discectomy and fusion in April 2013. Doc. 12-6 at 103, 106, 109.

While Plaintiff noted some improvement following her surgery, *see, e.g.*, Doc. 12-6 at 77, 96 & Doc. 12-7 at 8, and medication helped abate the pain, Doc. 12-6 at 89, she repeatedly informed Drs. Balch and Tinley that the pain in her neck and shoulder persisted. *See, e.g.*, Doc. 12-6 at 91, 94, 99; Doc. 12-7 at 9. In an effort to manage Plaintiff's pain, Dr. Gunes administered five injections to her from between September 2013 and December 2013,[3] which provided relief, albeit, as noted at Plaintiff's follow-up visits, temporarily. *See* Doc. 13 at 62, 69, 76-77 & Doc. 13-1 at 20, 24.

Following her surgery, Plaintiff was examined by several doctors regarding her physical and mental ability to perform work-related activities. In April 2013, one of Plaintiff's treating physicians, Dr. Joe M. Etter, D.O., submitted a Medical Source Statement discussing her physical and mental abilities, *see* Doc. 13-2 at 49-51 (physical), 52-54 (mental), finding that Plaintiff could carry less than five pounds; she could stand/walk/sit less than two hours in an eight-hour workday (provided she alternate between sitting and standing at fifteen to twenty minute intervals); and her ability to push/pull was impaired. Doc. 13-2 at 49-51. In support of

---

[3] *See* Doc. 13 at 58 (cervical medial branch block), 64 (cervical steroid injection), 71 (lumbar steroid injection), 78 (same); Doc. 13-1 at 20 (cervical steroid injection)

these findings, Dr. Etter noted that that an MRI showed abnormalities in her back and neck, which caused her pain and rendered her unable to work. Doc. 13-2 at 51. Additionally, Dr. Etter filled out an "Ability for Employment/Residual Functional Capacity" form in which he opined that due to the pain in Plaintiff's neck and back, "physically [she] will never be able to work." Doc. 12-9 at 12. Dr. Etter indicated by checkmark his belief Plaintiff was medically disabled. Doc. 13-2 at 54.

In May 2013, Dr. Bobbie Lilly, Ph.D. performed a consultative clinical interview and mental status evaluation, which found no evidence of a thought disorder or cognitive impairment. *See* Doc. 12-6 at 29-34. While Dr. Lilly noted that Plaintiff suffered from recurrent major depressive disorder, she was optimistic that medication and therapy would "arrest [Plaintiff's] symptoms and . . . stabilize her emotionally." Doc. 12-6 at 33.

Also in May 2013, Plaintiff reported to Dr. Oscar Becerra, M.D. for a consultative internal medicine examination. Doc. 12-6 at 36. Dr. Becerra concluded that, despite receiving diverse treatment, Plaintiff still had severely reduced range of motion and very limited mobility in her neck. Doc. 12-6 at 39. An x-ray of Plaintiff's spine, which was taken during the examination, also revealed "degenerative disk changes" at L3-4. Doc. 12-6 at 41.

In June 2013, Dr. Laurence Ligon, M.D., and Dr. Jim Cox, Ph.D., performed a physical residual functional capacity ("RFC") assessment and a psychiatric review technique assessment, respectively. Doc. 12-2 at 7. Dr. Ligon noted that Plaintiff could lift/carry/pull ten pounds occasionally and less than ten pounds frequently, and sit/stand/walk for about six hours in an eight-hour workday. Dr. Cox found that Plaintiff's affective disorders were non-severe. Doc. 12-2 at 6. In September 2013, additional physical and mental RFC assessments were performed by Dr. Randal Reid, M.D. and Dr. Robert B. White, Ph.D., respectively. Aside from his finding

4

that Plaintiff could only stand/walk for two hours in an eight-hour workday, Dr. Reid's physical assessment essentially mirrored Dr. Ligon's finding that Plaintiff was capable of performing sedentary work. Doc. 12-2 at 20-21, 23.

Plaintiff's final disability-related assessment was performed in May 2014 by Dr. Gunes. In a Medical Source Statement, Dr. Gunes noted that given Plaintiff's "severe chronic low back pain and right lumbar radiculopathy," "severe chronic neck pain," and surgical history, she only occasionally could carry items weighing less than ten pounds and stand/walk/sit for less than two hours in an eight-hour workday. Doc. 13-1 at 48-50. Like Dr. Etter, Dr. Gunes indicated that he believed Plaintiff was medically disabled, and that her back and neck pain permanently affected her ability to perform any type of work. Doc. 13-1 at 50-51.

## C. ALJ's Findings

In November 2014, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Doc. 12-1 at 76. First, the ALJ found that Plaintiff did not engage in any substantial gainful activity from her alleged onset date through her date last insured in September 2014. Doc. 12-1 at 70, 76. The ALJ then determined that Plaintiff had the following severe impairments: "degenerative disc disease with a history of cervical and lumbar fusion." Doc. 12-1 at 70. Additionally, the ALJ determined that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination" were non-severe. Doc. 12-1 at 70-71. The ALJ ultimately found that Plaintiff's severe impairments – taken individually and in combination – did not meet or medically equal the criteria for any of the listed impairments. Doc. 12-1 at 72.

5

Thus, the ALJ found that Plaintiff had the residual functional capacity to perform sedentary work, except she would require a cane at all times for ambulation.[4] Doc. 12-1 at 74. The ALJ further found Plaintiff capable of performing her past relevant work as an account manager. Doc. 12-1 at 76.

## II. LEGAL STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which lasts or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; and (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the

---

[4] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, expert vocational testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ANALYSIS

Plaintiff raises three issues on appeal: (1) whether the ALJ erred in finding her mental impairments non-severe; (2) whether the ALJ afforded the proper weight to the opinions of the non-examining experts, versus those of her treating physicians, when formulating her RFC; and (3) whether the ALJ properly assessed Plaintiff's credibility. Because this case is resolved on the second ground, the other two issues are not reached. However, Plaintiff may raise those issues before the ALJ on remand. 20 C.F.R. § 404.983 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

Plaintiff argues that the ALJ erred in his RFC assessment by affording moderate weight to the opinions of non-examining consultants, Drs. Ligon and Reid, because (1) they lack an examining relationship with Plaintiff, and (2) additional evidence supporting Plaintiff's limitations was submitted after the doctors made their determination, Doc. 16 at 19. Additionally, Plaintiff objects to the ALJ affording "little weight" to the opinions of her treating physicians, Drs. Etter and Gunes, without engaging in a detailed analysis of the factors under 20 C.F.R. section 404.1527 ("the Section 1527 factors"), as mandated by the Court of Appeals for the Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000). Doc. 16 at 18. Plaintiff contends that this error resulted in the ALJ improperly affording too little weight to her treating physicians' opinions, thereby prejudicing her and warranting reversal. Doc. 16 at 24.

In response, the Commissioner contends that the ALJ properly afforded less weight to the "check box" opinions of Plaintiff's treating physicians because they are conclusory and conflict with the record. Doc. 18 at 6-7. Additionally, the Commissioner argues that because the ALJ's opinion stated that he considered the Section 1527 factors, and the ALJ need not recite said factors "as a litany," no error occurred. Doc. 18 at 8. Furthermore, the Commissioner argues that analysis of the Section 1527 factors is not required where, as here, other "competing first-hand medical evidence" exists. Doc. 18 at 8.

The RFC is an assessment, based upon all of the relevant evidence, of a claimant's ability to work, despite her impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding her physical and mental limitations. *Id.* The RFC is considered by the ALJ, along with the claimant's age, education, and work experience, in determining whether the claimant can work. 20 C.F.R. § 404.1520(f). The RFC determination falls solely to the ALJ, who alone is responsible for resolving any conflicts in the evidence. *See*

8

*Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam).

A treating physician's opinion about the nature and severity of a claimant's impairment must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (alteration in original). "The opinion of a specialist generally is accorded greater weight than that of a non-specialist." *Newton*, 209 F.3d at 455 (citation and internal quotation marks omitted). However, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," or to give little or no weight to a treating physician's opinion if the ALJ provides "good cause" for doing so. *Id.* at 455-56. Good cause exists when a treating source's opinion is conclusory, unsupported by medically acceptable evidence, or lacks substantial support. *Id.* at 456 (internal citations omitted).

However, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [Section 1527]." *Id.* at 453 (emphasis in original). Under that rubric, the ALJ must consider the following six factors: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support for the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of

9

the treating physician. *Id.* at 455-56. However, as the Commissioner correctly points out, "the *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F. App'x 461, 467 (5th Cir. 2009) (per curiam). Thus, where the ALJ is confronted with competing opinions of examining physicians, he "need not necessarily set forth his analysis of the Section [1527] factors when declining to give controlling weight to a treating physician." *Garza v. Colvin*, No. 3:15-CV-1959-BN, 2016 WL 3181999, at *4 (N.D. Tex. June 8, 2016) (Horan, J.) (citing *Qualls*, 339 F. App'x at 466-67).

Turning again to the case *sub judice*, the Court first notes that a determination by a treating physician that an applicant is "disabled" or "unable to work" is not a medical opinion entitled to deference, but rather a legal conclusion "reserved to the Commissioner." *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam); *see* 20 C.F.R. § 416.927(c)(2) and (d)(3). Thus, the ALJ did not err in failing to credit Dr. Etter's and Dr. Gunes' conclusions that Plaintiff is disabled and unable to work. *Frank*, 326 F.3d at 620. However, Dr. Etter's and Dr. Gunes' opinions go beyond Plaintiff's disability/inability to work; they also relate to Plaintiff's ability to perform physical work-related activities, which is within the doctors' purview as treating physicians. *See* Doc. 13-1 at 48-50; Doc. 13-2 at 49-51. And medical opinions of what activities a claimant is capable of doing, are precisely the type of evidence that an ALJ must consider. 20 C.F.R. § 404.1513(c)(1).

Both Drs. Etter and Gunes determined that Plaintiff only was able to sit/stand/walk for two hours in an eight-hour workday, an opinion to which the ALJ afforded "little weight" when he ultimately determined she could sit for up to six hours in an eight-hour workday. Doc. 12-1 at 74; *see* SSR 96-9p, 1996 WL 374185, at *3 (discussing the physical requirements of sedentary work). Therefore, the ALJ's determination essentially rejected the opinions of Drs. Etter and

Gunes that Plaintiff could not perform the full range of sedentary work. *See, e.g.*, *Rodriguez v. Colvin*, No. 4:12-CV-825-Y, 2013 WL 6704882, at *7 (N.D. Tex. Dec. 19, 2013) (Means, J.) (finding that the ALJ, "in essence, rejected" the opinions of claimant's examining physician and treating psychiatrist where both found claimant's ability to perform work-related activities was more restricted than the ALJ's ultimate finding).

As discussed *supra*, in rejecting the opinion of a treating physician the ALJ need not discuss the Section 1527 factors where "reliable medical evidence from a treating or examining physician" controverts the treating physician's opinion. *Newton*, 209 F.3d 448, 453. The opinions of non-examining/non-treating physicians, however, do not constitute such evidence. *See Beasley v. Barnhart*, 191 F. App'x 331, 336 (5th Cir. 2006) (per curiam); *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (Solis, J.); *see also Stacy v. Colvin*, No. 3:16-CV-464-BF, 2016 WL 7174656, at *4 (N.D. Tex. Dec. 6, 2016) (Stickney, J.) (finding that the "one time examination of a consultative examiner does not reliably controvert the opinion of Plaintiff's treating specialist"). Thus, where a treating physician's opinion is controverted only by the opinion of a non-examining physician, and the ALJ rejects the treating physician's opinion, the ALJ must discuss the Section 1527 factors.

In terms of controverting evidence, the ALJ points to Dr. Gunes' August 2013 examination of Plaintiff where she exhibited "normal reflexes, sensation, gait and strength." Doc. 12-1 at 75. However, the ALJ does not explain, and a review of the examination notes does not reveal, how that single observation controverts Dr. Etter's and Dr. Gunes' opinions that Plaintiff is unable to sit for more than two hours in an eight-hour workday. *See* Doc. 13-1 at 44–47. While Plaintiff was also examined by Drs. Becerra, Tinley, and Lilly, none of them offered – and the ALJ does not point to – a controverting opinion regarding Plaintiff's ability to perform

11

sedentary work. In fact, the only controverting evidence discussed by the ALJ are the opinions of non-examining physicians, Drs. Ligon and Reid, both of whom found Plaintiff capable of sitting for six hours in an eight-hour workday. Doc. 12-1 at 75. On this record, the Court concludes that the ALJ was required to discuss the Section 1527 factors before rejecting the opinions of Drs. Etter and Gunes. *Newton*, 209 F.3d 448, 453

Nonetheless, the Commissioner correctly notes that judges of this Court have found that the ALJ "need not recite each [Section 1527] factor as a litany in every case," provided that he or she apply the factors and articulate good reasons for the weight assigned to each treating source. *See, e.g.*, *Hawkins v. Astrue*, No. 09-CV-2094-BD, 2011 WL 1107205, at *6 (N.D. Tex. Mar. 25, 2011) (Kaplan, J.) (citations omitted). Indeed, in determining whether the Section 1527 factors have been applied, the Court generally engages in a substantive evaluation of the ALJ's analysis. *See Urrutia v. Colvin*, No. 15-CV-2421-D, 2016 WL 1161794, at *5 (N.D. Tex. Mar. 24, 2016) (Fitzwater, J.) (determining whether the ALJ applied the Section 1527 factors by "[e]valuating the entirety of the ALJ's analysis, and focusing on its substance rather than its form"); *Patino v. Colvin*, No. 15-CV-0618-BF, 2016 WL 1664912, at *7 (N.D. Tex. Apr. 25, 2016) (Stickney, J.) (analyzing the ALJ's analysis to determine whether each section 1527 factor was discussed); *Escobedo v. Colvin*, No. 13-CV-0979-BN, 2014 WL 127091, at *5 (N.D. Tex. Jan. 14, 2014) (Horan, J.) (same). The Court will now undertake such an evaluation here.

At the outset of his RFC analysis, the ALJ states that he "considered the opinion evidence in accordance with the requirements of [Section 1527.]" Doc. 12-1 at 74. Regarding his decision to afford "little weight" to the opinions of Drs. Etter and Gunes, the ALJ states:

> The undersigned notes that the record shows that neither Dr. Etter nor Dr. Gunes are trained in rehabilitative medicine or in disability evaluations for any purpose, in contrast to the expertise and training of the medical consultants, particularly with respect to Social Security. Indeed, the record shows that Dr. Etter provided only

12

primary care to the claimant, and referred the claimant's [sic] to specialists such as Dr. Tinley and Dr. Gunes for her orthopedic problems and pain. Yet when most thoroughly examined by Dr. Gunes, the claimant exhibited the normal reflexes, sensation, gait and strength already discussed in detail above.[5] Dr. Gunes' opinion thus runs contrary to the opinions of two state agency consultants[6] who had both more expertise to render such opinions, and better access to the claimant's entire medical record, and to his own medical findings. Both his opinion, and the even less-informed opinion of Dr. Etter, have been accorded little weight in this decision.

Doc. 12-1 at 75.

While the ALJ was not required to mechanically list each Section 1527 factor, it is not at all clear from his discussion that each factor was applied, discussed, or considered. *Jeffcoat*, 2010 WL 1685825, at *3. For instance, the ALJ fails to mention either Dr. Etter's and Dr. Gunes' lengthy treating relationship with Plaintiff, or the frequency of their examinations of her, or that the ALJ even considered the same. Instead, the ALJ mentions only one encounter between Plaintiff and Dr. Gunes in his opinion, *see* Doc. 12-1 at 73-74, despite the fact that the records reveals Plaintiff visited Dr. Gunes on numerous occasions. *See* Doc. 13 at 58, 62, 69, 71, 76-78; Doc. 13-1 at 9, 20, 24; Doc. 13-2 at 30, 35, 38-39, 41, 44, 46-47. Additionally, while there is general mention of the medical record, there is no analysis of the support afforded (or not afforded) to the treating physicians' opinions by the medical evidence or the consistency (or inconsistency) of the opinions with the record *as a whole*. The closest the ALJ comes to such analysis is his finding, previously mentioned herein, that that Dr. Gunes' opinion conflicts with notations from Dr. Gunes' August 2013 examination of Plaintiff, as well as the opinions of the two non-examining consultants. Doc. 12-1 at 75.

Although the ALJ recites that he considered the evidence in light of the requirements of Section 1527, the record offers no confirmation of that fact. *Cf. Jeffcoat v. Astrue*, No. 08-CV-

---

[5] The referenced examination was performed in August 2013. Doc. 13-1 at 44.
[6] While not specifically named, the undersigned presumes that the ALJ is referring to the opinions of Drs. Ligon and Reid.

13

672-A, 2010 WL 1685825, at *3 (N.D. Tex. Apr. 23, 2010) (McBryde, J.) (finding that the ALJ applied the Section 1527 factors where "his discussion of [the treating physician's] opinion shows that he considered each [factor] in reaching his decision to reject [the treating physician's] opinion"). Thus, the Court finds that the ALJ erred in failing to analyze the Section 1527 factors before rejecting the opinions of Plaintiff's treating physicians. *See Garza v. Astrue*, No. 4:10-CV-l52-Y, 2011 WL 824684, at *5 (N.D. Tex. Jan. 20, 2011) (Cureton, J.) ("Although the ALJ stated that he had considered opinion evidence in accordance with the requirements of [Section 1527], there is no indication that the ALJ followed the required statutory analysis."), *adopted by* 2011 WL 830178 (Means, J.).

    The Court's analysis does not end there. Reversal and remand is not warranted by the mere fact that the ALJ erred procedurally. Instead, the error must "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). Stated differently, "[r]emand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Ware v. Colvin*, No. 3:11-CV-1133-P, 2013 WL 3829472, at *4 (N.D. Tex. July 24, 2013) (Solis, J.) (citing *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam)).

    On the record before the Court, the ALJ's failure to conduct the proper analysis of the Section 1527 factors is not harmless. As mentioned previously, Drs. Etter and Gunes were the only treating/examining physicians to offer opinions regarding Plaintiff's physical ability to perform work-related activities, and they specifically found that she could only sit/stand/walk for less than two hours in an eight-hour workday. However, the ALJ found that Plaintiff was able to perform sedentary work, limited only by the use of a cane for ambulation. Because sedentary work requires sitting for approximately six hours in an eight-hour workday, the ALJ's finding

clearly conflicted with the opinions of the treating sources. *See* SSR 96-9p, 1996 WL 374185, at
\*3. Again, the only medical opinions that supported the ALJ's finding that Plaintiff was capable
of sedentary work were those of Drs. Ligon and Reid, neither of whom was a treating source.
Moreover, it appears that neither Dr. Etter's April 2013 Medical Source Statement nor Dr.
Gunes' Medical Source Statement were reviewed by Drs. Ligon and Reid as a part of their
assessments.[7]

Based on the foregoing, the Court finds that, had the ALJ applied a detailed analysis of
the section 1527 factors, there is "a realistic possibility that the ALJ would have reached a
different conclusion absent the error." *Ware*, 2013 WL 3829472, at \*4. Thus, the ALJ's error
was not harmless. *See Garza*, 2011 WL 824684, at \*5 ("Because there is no evidence that the
ALJ relied on another *treating* or *examining* physician that controverts [claimant's treating
physician's] opinions, but instead relied on the non-examining [physician's] opinion, the ALJ's
failure to examine the [Section 1527] factors constitutes reversible error.").

## IV. CONCLUSION

For the forgoing reasons, it is recommended that Plaintiff's *Motion for Summary
Judgment*, Doc. 16, be **GRANTED**, Defendant's *Motion for Summary Judgment*, Doc. 17, be
**DENIED**, the decision of the Commissioner be **REVERSED,** and this case be **REMANDED**
for further administrative proceedings.

---

[7] Dr. Etter's Medical Source Statement does not appear on the list of exhibits that Drs. Ligon and
Reid relied on in giving their RFC assessment. *See* Doc. 12-2 at 3–4 (Dr. Ligon's Assessment),
15–18 (Dr. Reid's Assessment). Additionally, Drs. Ligon and Reid state that "[t]here is no
indication that there is medical or other opinion evidence" in the record. Doc. 12-2 at 7 (Dr.
Ligon's Assessment), Doc. 12-2 at 20 (Dr. Reid's Assessment). Dr. Gunes' Medical Source
Statement was also not part of the record that Drs. Ligon and Reid examined because it was
submitted several months after their assessments.

**SO RECOMMENDED** on May 16, 2017.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE